USCA NO. 15-14842

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

United States District Court, Middle District of Florida, Orlando Division
Case No. 6:14-cv-37-Orl-31TBS

NAM DANG, by and through his
Power of Attorney, VINA DANG,

Appellants,

vs.

DONALD F. ESLINGER, in his official
capacity as the SHERIFF OF SEMINOLE
COUNTY; OLUGBENGA OGUNSANWO, M.D.;
SANDRA WILT, LPN; BRENDA PRESTON-
MAYLE, RN; ALECIA SCOTT, LPN; SHARYLE
ROBERTS, LPN; and MARTHA DENSMORE, RN;
Appellees.

## ANSWER BRIEF OF APPELLEE, OLUGBENGA OGUNSANWO, M.D.

/s/ Bruce R. Bogan
Bruce R. Bogan, Esquire
Florida Bar No. 599565
Melissa J. Sydow, Esquire
Florida Bar No. 39102
Hilyard, Bogan & Palmer, P.A.
Post Office Box 4973
Orlando, FL 32802-4973
Telephone: 407-425-4251
Facsimile: 407-841-8431
E-Mail: bbogan@hilyardlawfirm.com
E-Mail: msydow@hilyardlawfirm.com
Attorney for Appellee Ogunsanwo

# CERTIFICATE OF INTERESTED PERSONS

Appellee, Olugbenga Ogunsanwo, M.D., through his undersigned counsel, certifies that the following persons have an interest in the outcome of this case:

1.   Nam Dang- Plaintiff/Appellant

2.   Vina Dang- Power of Attorney for Plaintiff/Appellant

3.   Steven R. Maher- Counsel for Appellant

4.   Melissa H. Powers - Counsel for Appellant

5.   Daniel W. Cotter- Counsel for Appellant

6.   Matthew P. Farmer- Counsel for Appellant

7.   The Maher Law Firm, P.A.- Law firm for Appellant

8.   Farmer & Fitzgerald, P.A.- Law firm for Appellant

9.   Donald F. Eslinger, Seminole County Sheriff -Defendant/Appellee

10.  Sandra Wilt, LPN- Defendant/Appellee

11.  Brenda Preston-Mayle, RN- Defendant/Appellee

12.  D. Andrew DeBevoise - Counsel for Appellees Sheriff Donald F.Eslinger, Sandra Wilt, LPN and Brenda Preston-Mayle, RN

13.  Jeffrey K. Grant- Counsel for Appellees Sheriff Donald F. Eslinger, Sandra Wilt, LPN and Brenda Preston-Mayle, RN

14.  Thomas W. Poulton- Counsel for Appellees Sheriff Donald F. Eslinger, Sandra Wilt, LPN and Brenda Preston-Mayle, RN

15. DeBevoise & Poulton, P.A.- Law firm for Appellees Donald F. Eslinger, Sandra Wilt, LPN and Brenda Preston-Mayle, RN

16. Alecia Scott, LPN – Defendant/Appellee

17. Sharyle Roberts, LPN –Defendant/Appellee

18. Martha Densmore, RN- Defendant/Appellee

19. John M. Green, Jr. - Counsel for Appellees Alecia Scott, LPN, Sharyle Roberts, LPN and Martha Densmore, RN

20. John M. Green, Jr., P.A.- Law firm for Defendants/Appellees Alecia Scott, LPN, Sharyle Roberts, LPN and Martha Densmore, RN

21. Linda L. Winchenbach, Counsel for Appellees Alecia Scott, LPN, Sharyle Roberts, LPN and Martha Densmore, RN

22. Olugbenga Ogunsanwo, M.D.- Defendant/Appellee

23. Bruce R. Bogan- Lead Counsel for Appellee Olugbenga Ogunsanwo, M.D.

24. Melissa J. Sydow- Counsel for Appellee Olugbenga Ogunsanwo, M.D.

25. Hilyard, Bogan & Palmer, P.A.- Law firm for Appellee Olugbenga Ogunsanwo, M.D.

26. Hon. Gregory Presnell, United States District Judge

27. Hon. Thomas Smith, United States Magistrate Judge

# CORPORATE DISCLOSURE STATEMENT

Neither Appellee, Olugbenga Ogunsanwo, M.D., nor his counsel, Hilyard,

Bogan & Palmer, P.A. have any parent companies, subsidiaries or affiliates.

Bruce R. Bogan, Esquire
Counsel for Appellee, Olugbenga Ogunsanwo, M.D.

# STATEMENT REGARDING ORAL ARGUMENT

This Appellee does not request oral argument, because the briefing in this case sufficiently analyzes the issue on appeal and shows that summary judgment granted to the Appellee should be affirmed.

# <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

Certificate of Interested Persons and Corporate Disclosure Statement..........C1-C3

Statement Regarding Oral Argument...............................................i

Table of Contents..................................................................ii

Table of Citations...............................................................iii-iv

Table of Record References.......................................................v-vii

Statement of the Case
      Course of the Proceedings and Dispositions Below...........................1-2
      Statement of the Facts.......................................................2-8
      Standard of Review..........................................................8-9

Summary of the Argument.........................................................9-10

Argument .......................................................................10-22

Conclusion.....................................................................22-23

Certificate of Compliance with FRAP 32(a)(7)...................................23-24

Certificate of Service............................................................24

# TABLE OF CITATIONS

Rules                                                                          Page(s)

Federal Rule of Civil Procedure 56(a)...........................................................8


Federal Statutes                                                               Page(s)

42 USC §1983..........................................................................................11, 21


Cases                                                                          Page(s)

*Ancata v. Prison Health Services*, 769 F. 2d 700 (11th Cir. 1985)...................19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).9

*Andujar v. Rodriguez*, 486 F. 3d 1199, 1203 (11th Cir. 2007)....................11, 20

*Burnette v. Taylor*, 533 F. 3d 1325, 1331 (11th Cir. 2008)..........................12

*Carswell v. Bay County*, 854 F. 2d 454 (11th Cir. 1988).............................19

*Castro v. County of Los Angelos*, 797 F. 3d 654 (9th Cir. 2015)....................21

*Davis v. Wessel*, 2015 U.S. App. LEXIS 11685 (7th Cir. Ill. July 7, 2015)..........22

*Evers v. Gen. Motors Corp.*, 770 F. 2d 984, 986 (11th Cir. 1985)....................9

*Farmer v. Brennan*, 511 U.S. 825, 838 (1994)........................................12

*Farrow v. West*, 320 F. 3d 1235, 1243 (11th Cir. 2003)..............................11

*Gilbert v. Rohana*, 2015 U.S. Dist. LEXIS 144134 (S.D. Ind. Oct. 23, 2015)......22

*Gargiulo v. G.M. Sales, Inc.*, 131 F. 3d 995, 999 (11th Cir. 1997)...................9

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727 (1982)..........................18

*Harris v. Thigpen*, 941 F. 2d 1495, 1505 (11th Cir. 1991)............................13

*Johnson v. Clafton,* 2015 WL 5729080 (E.D. Michigan, Sept. 30, 2015)...........21

*Kennedy v. Bd. of Cnty. Comm'rs for Okla. Cnty.,* 2015 U.S. Dist. LEXIS 87155 (W.D. Okla. July 6, 2015)..........................................................................22

*Kingsley v. Hendrickson,* 135 S. Ct. 2466, 2468 (2015).....................20, 21, 22

*Kruse v. Williams,* 592 Fed. Appx. 848, 858-59 (11th Cir. Dec. 4, 2014)...........18

*Mandel v. Doe,* 888 F. 2d 783 (11th Cir. 1989)........................................19

*McClish v. Nugent,* 483 F. 3d 1231, 1237 (11th Cir. 2007)...........................18

*McElligott v. Foley,* 182 F. 3d 1248 (11th Cir. 1999)................................19

*Pearson v. Callahan,* 129 S. Ct. 808, 815 (2009).....................................18

*Popoalii v. Corr. Med. Servs.,* 512 F. 3d 488, 500 (8th Cir. Mo. 2008)..............18

*Roberts v. C-73 Med. Dir.,* 2015 U.S. Dist. LEXIS 91072 (S.D.N.Y. July 13, 2015).....................................................................................22

*Saetrum v. Raney,* 2015 WL 4730293 (D. Idaho, Aug. 7, 2015)....................21

*Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988)...8

*United States v. Lanier,* 520 U.S. 259, 271 (1997)....................................20

# TABLE OF RECORD REFERENCES

| Docket No. | Document Name | Brief Page |
|---|---|---|
| 47 | Amended Complaint | 1 |
| 120 | Response to Motion re 119 Motion to Substitute Party as Persona Representative | 6 |
| 127 | Motion for Summary Judgment and Memorandum of Law by Alecia Scott | 1 |
| 128 | Motion for Summary Judgment and Memorandum of Law by Sharyle Roberts | 1 |
| 128-1 | Deposition of Sharyle Roberts taken 02-25-2015 | 6 |
| 129 | Motion for Summary Judgment and Memorandum of Law by Martha Densmore | 1 |
| 130-1 | Deposition of Martha Densmore taken 02-25-2-15 | 3, 4, 8, 17 |
| 137 | Motion for Summary Judgment by Sandra Wilt | 1 |
| 138 | Motion for Summary Judgment by Brenda Preston-Mayle | 1 |
| 140 | Motion for Summary Judgment by Sheriff of Seminole County, Florida | 1 |
| 140-1 | Seminole County Sheriff's Office Medical Records | 8, 13 |
| 141 | Deposition of Nam Dang taken 08-28-2014 | 2, 3, 4, 5, 11, 12 |
| 142 | Deposition of Sandra Wilt taken 02-25-2015 | 3, 4 |
| 143 | Deposition of Brenda Preston-Mayle taken 03-13-2015 | 5 |
| 147 | Deposition of Olugbenga Ogunsanwo taken 01-26-2015 | 13, 16 |
| 148 | Deposition of Valerie Westhead taken 05-07-2015 | 6, 13, 14 |
| 150-7 | Expert Report of Sandeep Rahangdale, M.D. | 12 |

| 152 | Motion for Summary Judgment by Olugbenga Ogunsanwo | 1 |
|---|---|---|
| 152-1 | Affidavit of Olugbenga Ogunsanwo | 3, 4, 5, 6, 7, 8, 11, 12, 13, 16 |
| 164-10 | Videotape Deposition of Martha Densmore | 7, 8, 14, 15 |
| 164-11 | Videotape Deposition of Alecia Scott | 5, 17 |
| 166 | Plaintiff's Response in Opposition and Request for Oral Argument | 17 |
| 175 | Reply to 166 Response to Motion re 127 Motion for Summary Judgment and Memorandum of Law by Alecia Scott | 1 |
| 176 | Reply to 166 Response to Motion re 128 Motion for Summary Judgment and Memorandum of Law by Sharyle Roberts | 1 |
| 177 | Reply to 166 Response to Motion re 129 Motion for Summary Judgment and Memorandum of Law by Martha Densmore | 1 |
| 178 | Reply to 167 Response to Motion re 140 Motion for Summary Judgment filed by Sheriff of Seminole County, Florida | 1 |
| 179 | Reply to 166 Response to Motion re 138 Motion for Summary Judgment, 137 Motion for Summary Judgment filed by Brenda Preston-Mayle, Sandra Wilt | 1 |
| 180 | Reply to 166 Response to Motion re 152 Motion for Summary Judgment filed by Olugbenga Ogunsanwo | 1 |
| 184 | Order granting 127 Motion for Summary Judgment; granting 128 Motion for Summary Judgment; granting 129 Motion for Summary Judgment; granting 137 Motion for Summary Judgment; granting 138 Motion for Summary Judgment; granting 140 Motion for Summary Judgment; granting 152 Motion for Summary Judgment | 2, 11, 12, 14, 20 |
| 185 | Judgment in favor of Sheriff of Seminole County, Florida, Alecia Scott, Brenda Preston-Mayle, Martha Densmore, Olugbenga Ogunsanwo, Sandra Wilt, Sharyle Roberts and against Nam Dang | 2 |

| 194 | Motion to Alter 185 Judgment or Amend Judgment by Nam Dang | 2 |
|---|---|---|
| 201 | Order denying 194 Motion to Alter Judgment | 2 |
| 205 | Notice of Appeal as to 185 Judgment, 201 Order on Motion to Alter Judgment by Nam Dang | 2 |
| | Initial Brief | 14, 15, 16, 17, 20 |

## STATEMENT OF THE CASE

A.   COURSE OF THE PROCEEDINGS AND DISPOSITIONS BELOW

This case arises out of Appellant, Nam Dang's twenty-eight day detention at the John E. Polk Correctional Facility from January 26, 2012 to February 23, 2012. During Dang's incarceration, he experienced various symptoms on different dates and Appellee, Olugbenga Ogunsanwo, M.D. provided Dang with medical treatment on two separate occasions. Unfortunately, Dang was not forthcoming with his medical history. He failed to disclose that, less than two weeks prior to his arrest, he had presented to the emergency room with similar complaints and declined a spinal tap to rule out meningitis. Ogunsanwo never refused to treat Dang and never ignored his complaints. Upon his release from the jail, Dang was diagnosed with cryptococcal meningitis. The district court properly found that the consequence in this case while tragic, was not the result of Ogunsanwo's deliberate indifference to Dang's serious medical need.

On January 9, 2014, the Appellant Nam Dang, filed his First Amended Complaint, brought by Vina Dang[1], under a power of attorney. (Doc. 47). The Appellees moved for summary judgment (Docs. 127, 128, 129, 137, 138, 140 and 152), the Appellant responded (Docs. 176 and 177) and the Appellees replied. (Docs. 175-180). The district court held oral argument on July 29, 2015 and

---

[1] All references to "Dang" or "Appellant" in this Brief are to Appellant, Nam Dang.

subsequently issued an order granting summary judgment to all Defendants on August 25, 2015. (Doc. 184). Judgment was entered on August 26, 2015. (Doc. 185). The Appellant's Motion to Alter or Amend Judgment (Doc. 194) was denied. (Doc. 201). A Notice Of Appeal was filed on October 28, 2015. (Doc. 205).

B.  STATEMENT OF THE FACTS

On December 22, 2011, about a month before his incarceration, Dang was detained by the City County Investigation Bureau (CCIB), a division of Seminole County Sheriff's Office. (Doc. 141, pg. 47). CCIB deputies allegedly slammed him on the ground and put their knee in his neck, but ultimately did not arrest him. (*Id.* at 69-70). After his detention, he experienced severe headaches and neck pain that he treated with large amounts of Aleve. (*Id.* at, pgs. 63, 65, 71).

The Initial Brief ignores Dang's January 12, 2012 emergency room visit. On that date, Dang presented to the Central Florida Regional Hospital Emergency Room with complaints of neck pain and headaches because he felt like his head was "going to blow up." (*Id.* at pg. 37, 38). Medical providers recommended that Dang undergo a lumbar puncture or a spinal tap to rule out meningitis. (*Id.* at pg. 40). Dang declined because he did not have insurance. (*Id.* at pg. 41). Dang continued taking Aleve and increased the dosage, but still suffered from bad headaches. (*Id.* at pg. 63, 66).

2

On January 26, 2012, Dang was arrested at his house without incident and booked into the John E. Polk Correctional Facility (the "jail"). (*Id.* at pg. 60, 68-70; Doc.152-1, pg. 3). Olugbenga Ogunsanwo, M.D. was the Medical Director for the Seminole County Sheriff at the jail. (Doc.152-1, pg. 2). Ogunsanwo's role was to provide physician services to the inmates that were scheduled for examination. (*Id.*). A nurse would schedule an inmate for a doctor visit. ("doctor sick call") if the inmate had abnormality in the initial screening or the history and physical. (*Id.*). During the course of an inmate's incarceration, if the inmate complained of a health problem, a nurse would examine the inmate and determine whether to schedule a doctor visit. (*Id.*). Ogunsanwo only physically examined Dang on two occasions during Dang's incarceration. (*Id.* pg. 3; Doc. 141, pg.113-114).

During his initial intake screening, Dang denied illness or injury and his vitals were normal. (Doc. 152-1, pg. 3). On January 29, 2012, Dang complained of neck pain and headaches and was evaluated by Sandra Wilt, L.P.N. (Doc. 141, pg. 80-81; Doc 130-1, pg. 28). Dang told Wilt he thought his "moderate to severe head and neck pains" were possibly the result of a "pinched nerve" and "stiff neck." (Doc. 142, pg. 85). He failed to disclose his emergency room visit or that he had refused a lumbar puncture to determine whether he had meningitis. (Doc. 141, pg. 82-84). Dang did not accurately provide his medical history to the medical staff at the jail because it was none of their business. (*Id.*) Wilt treated Dang with

ibuprofen and muscle rub and scheduled him for "doctor sick call." (Doc. 142, pg. 30).

As a result of a "doctor sick call" entered by Wilt, Ogunsanwo examined Dang for the first time on February 1, 2012. (Doc. 130-1, pg. 26; Doc. 141, pg. 75, 88). Dang complained of headaches, neck pain and stiffness. (Doc. 141, pg. 115; Doc. 130-1, pg. 26). Dang related his neck and back pain to a physical altercation with police that occurred before he was arrested and taken to the jail on January 26, 2012. (Doc. 141, pg. 115; Doc. 152-1, pg.3). Based on Dang's statements, Ogunsanwo assumed the physical altercation occurred just prior to his arrival at the jail. (Doc. 152-1, pg.3). Dang failed to disclose his emergency room visit or that he declined a spinal tap to rule out meningitus. (Doc. 141, pg.115-116). He also failed to disclose that in the months prior to his arrest, he used Oxycodone without a prescription, by crushing and snorting it, as frequently as every other day. (*Id.* pg. 42-46). Dang stopped using Oxycodone "cold turkey" on December 22, 2011. (*Id.* pg. 55- 56). During the examination, Dang's temperature was 98.9 and he did not have any signs of neurological deficits. (Doc. 152-1, pg.3). Dang had full range of motion in his cervical spine, with mild pain elicited and a normal gait. (*Id.*). Ogunsanwo determined that Dang's neck pain, stiffness and headaches were related to the physical altercation with police. (*Id.*). Dang reported that ibuprofen helped his symptoms and Ogunsanwo increased the ibuprofen dosage and

prescribed Robaxin, a muscle relaxant. (*Id.*). Ogunsanwo did not see Dang again until he was scheduled for a physician visit on February 23, 2012. (*Id.*).

On February 7, 2012, Brenda Preston-Mayle, R.N. completed a routine history and physical on Dang. (*Id.*). Dang complained of headaches, back and neck pain. (Doc. 143, pg.34-39). He again related his pain to CCIB deputies yanking him out of a car and complained that the deputies had hyperextended his neck. (*Id*). Dang did not disclose his recent visit to the emergency room or that he declined a spinal tap. (Doc. 141, pg.88-89). Ogunsanwo was not made aware of any abnormalities associated with Dang's history and physical, nor was Dang scheduled for "doctor sick call" as a result of this examination. (Doc. 152-1, pg.4)

On February 9, 2012, Dang was evaluated by Alecia Scott, L.P.N. for complaints of a headache. (Doc.164-11, pg.20, 25, 54). Dang had a fever of 101.5, full range of motion in his neck, was ambulatory and did not appear in distress. (*Id.* at 26,55). After Dang left medical that night, Scott had another encounter with him in the hallway and she characterized his behavior as bizarre. (*Id.* at pg.30-32, 57). Scott thought Dang may have mental health issues and referred him to mental health. (*Id.*pg.32-33). Ogunsanwo was not made aware of this visit, Dang's bizarre behavior, and Dang was not scheduled for "doctor sick call." (Doc. 152-1, pg.4).

The Initial Brief is silent regarding the February 10, 2012 evaluation. On that date, Dang underwent a mental health evaluation and his behavior was stable.

(*Id.* at pg. 5). Ogunsanwo was not advised or made aware of this visit nor was he scheduled for doctor sick call as a result of this examination. (*Id.*).

On February 20, 2012, Dang was evaluated by Sharyle Roberts, L.P.N. for a "code orange" encounter/emergency care. (Doc. 128-1, pg. 18). Ogunsanwo was not advised or made aware of this visit and Dang was not scheduled for "doctor sick call." (Doc. 152-1, pg.5). Later that day, Valerie Westhead, M.D., a psychiatrist, performed a mental status examination of Dang. (Doc. 148, pg. 22, 59-60). Dang failed to disclose his emergency room visit or that he declined a spinal tap to rule out meningitis. (*Id.* at pg. 63). Westhead evaluated Dang in the same way that a primary care physician would have conducted an examination and conducted a complete review of all of the major health systems, to attempt to identify neurologic, cardiac, blood pressure, asthma, lung problems or gastrointestinal problems. (*Id.* at pg. 30,42 -43). Westhead did not observe any symptoms or develop any concerns about Dang's physical or neurological condition that were alarming. (*Id.* at pg. 31-32). Westhead's observations did not, from a physician's standpoint, give her reason to believe that Dang had a medical condition that required either emergency room care or further medical evaluation. (*Id.* at pg.33,64). Ogunsanwo was not made aware of the visit or any medical concerns about Dang . (*Id.* at pg. 54; Doc. 152-1, pg.5; Doc. 120, pg.55-58, 64-65).

The Initial Brief fails to note that on February 22, 2012 Dang was examined on two separate occasions by Martha Densmore, R.N. and Nurse R. Thercier and his vital signs were normal each time. (Doc. 152-1, pg.5). Dang was not placed on "doctor sick call" or brought to the examination room for Ogunsanwo to complete an examination on this date. (*Id.*). On February 23, 2012, the following morning Dang complained to Densmore that he had a headache for two weeks. (Doc. 164-10, pg. 54-55). At that time, Densmore observed that Dang had white patches on his tongue, an unsteady gait and determined that his temperature was 99 degrees. (*Id.*). She notified Ogunsanwo and requested that he see Dang to address the complaints. (*Id.* at 57). At 11:15a.m. Densmore noticed that Dang had significantly deteriorated and informed Ogunsanwo that Dang needed to be seen right away. (*Id.* at 66). A corrections deputy obtained a wheelchair to transfer Dang from his cell to the examination room. (Doc. 164-10, pg. 66). Densmore advised that Dang was brought to the examination room at 12:07p.m. because the transfer process took a few minutes and Ogunsanwo may have been finishing up taking care of another inmate. (*Id.*).

This examination was the second, and final, examination that Ogunsanwo conducted upon Dang. (Doc. 152-1, pg.5). Dang's speech was slurred, but intelligible. (*Id.*). He complained of unsteadiness and weakness that he suspected was related to the muscle relaxer. (*Id*). Dang also complained of headaches and

7

neck pain. (*Id*). After the examination, Ogunsanwo diagnosed Dang with positive neurological defects, including gait unsteadiness, slurred speech, headache, equivocally positive neck stretch, and speech issues. (*Id.* at pg.6). Ogunsanwo suspected that he may have meningitis or an intracranial lesion and immediately ordered that he be transported to the hospital emergency room. (*Id*). The jail medical records show that at 12:08p.m., Densmore advised Sergeant Lawshe that Dang needed to go to the emergency room as soon as possible, then at 12:15p.m. she had a telephone conference with Central Florida Regional Hospital (CFRH) regarding the incident and then also left a message for Dr. Desai to call with any questions. (Doc. 140-1, pg. 7). Dang was transported to CFRH emergency room on February 23, 2012, approximately fifteen minutes after Ogunsanwo ordered that he be transported. (Doc.164-10, pg. 67). Several days later, he was diagnosed by with cryptococcal meningitis following a lumbar puncture. (Doc.130-1, p. 4, 6-7).

C.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying this standard, the Court must examine the materials on file and the record evidence "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). When faced with a

"properly supported motion for summary judgment [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value"). At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). Whether a fact is material depends on the applicable substantive law. *Id.* at 248, 106 S. Ct. at 2510. Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## SUMMARY OF THE ARGUMENT

The district court thoroughly analyzed the law and facts and made detailed conclusions in its well-reasoned Order. The court correctly determined that Olugbenga Ogunsanwo, M.D. was entitled to qualified immunity. No reasonable jury could interpret the facts as establishing a violation of Appellant, Nam

Dang's Fourteenth Amendment rights because Ogunsanwo did not know of a serious risk of harm to Dang or deliberately disregard his serious medical needs.

During the course of Dang's incarceration, Ogunsanwo only treated Dang twice. Unfortunately, Dang was not forthcoming with his medical history. He failed to disclose that, less than two weeks prior to his arrest, he had presented to the emergency room with similar complaints and declined a spinal tap to rule out meningitis. The Appellant cannot show that Ogunsanwo subjectively acted with deliberate indifference to Dang's objectively serious medical needs on either occasion. The Initial Brief improperly argues imputed or collective knowledge as a basis for the claim of deliberate indifference against Ogunsanwo. Essentially the Appellant's arguments are that Ogunsanwo acted negligently based upon what he should have known, not what he actually knew. Dang's position is contrary to precedent and is due to be denied.

The district court properly viewed the record facts in the light most favorable to Dang and correctly granted qualified immunity to Ogunsanwo. This Court should affirm the district court's Order on the Motions for Summary Judgment granting qualified immunity to Ogunsanwo.

## ARGUMENT

I.  THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT BECAUSE THE RECORD EVIDENCE DOES NOT

ESTABLISH THAT DR. OGUNSANWO WAS DELIBERATELY INDIFFERENT TO THE PLAINTIFF'S SERIOUS MEDICAL NEEDS

In order to establish that Ogunsanwo was deliberately indifferent to Dang's serious medical need, the Appellant must satisfy both an objective and a subjective inquiry. See *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). The district court properly found that it is well-settled that in order for a pretrial detainee to prevail on a § 1983 claim for inadequate medical care, a plaintiff must establish "(1) serious medical need (objective inquiry); (2) the defendant's deliberate indifference to that need (subjective inquiry); and (3) causation between the defendant's indifference and the plaintiff's injury." (Doc. 184, pg. 11). The Appellant must show Dang had an objectively serious medical need and that Ogunsanwo subjectively acted with deliberate indifference to that need. See *Andujar v. Rodriguez*, 486 F.3d 1199, 1203 (11th Cir. 2007). The Appellant cannot satisfy this burden. Dr. Ogunsanwo only examined Dang on February 1, 2012 and February 23, 2012. (Doc. 152-1, pg. 3; Doc. 141, pg.113-114). Outside of these two examinations, the Appellant relies upon unreasonable inferences to attempt to impute knowledge to Ogunsanwo regarding Dang's alleged ongoing complaints of worsening pain and deteriorating condition. The Initial Brief is plagued with argument regarding what information Ogunsanwo should have known, instead of what he actually knew. The district court correctly reasoned that "the remainder of Dang's arguments sound in negligence based on what Dr. Ogunsanwo should have

known, rather than what he knew." (Doc. 184, pg. 18). The court noted that "[b]inding precedent make it clear that no liability arises under the Constitution for 'an official's failure to alleviate a significant risk that he should have perceived but did not.'" (*Id.*)(citing *Farmer v. Brennan,* 511 U.S. 825, 838 (1994); *Burnette v. Taylor,* 533 F.3d 1325, 1331 (11th Cir. 2008)). The lower court soundly ruled that even if Ogunsanwo failed to properly discover that Dang suffered from meningitis, he was not deliberately indifferent. (Doc. 184, pg. 18).

*A. Dang Did Not Have An Objectively Serious Medical Need On February 1, 2012*

The undisputed evidence is that Dang did not have an objectively serious medical need on February 1, 2012. On this date, Dang had a temperature of 98.9, no neurological deficits, and he complained of headaches and neck pain/stiffness that he related to a physical altercation with police. (Doc. 141, pg.115,117; Doc. 152-1, pg. 4). He did not disclose that he visited the emergency room ten days prior or that he declined a spinal tap to rule out meningitis. (Doc. 141, pg.115-116). Dang objectively appeared to have musculoskeletal pain related to the physical altercation with CCIB deputies. (Doc. 150-7, p.5).

*B. Ogunsanwo Did Not Ignore Dang's Complaints Or Refuse To Treat Dang*

Ogunsanwo examined and treated Dang on February 1, 2012 and February 23, 2012. The district court correctly held that Ogunsanwo "did not ignore Dang's complaints or refuse to treat him on either of these dates." (Doc. 184, pg. 17). On

February 1, 2012, Ogunsanwo examined Dang and formulated a treatment plan for Dang, including ibuprofen, muscle rub and Robaxin. (Doc. 152-1, pg. 13; Doc. 147, pg 96). Although Dang disagrees with the treatment provided or diagnosis on this date, this does not amount to deliberate indifference. See *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991). On February 23, 2012, Ogunsanwo was clearly attentive to Dang, because after his examination he ordered that Dang be transported to the hospital emergency room[2]. (Doc. 152-1, pg.5). The Initial Brief complains that Ogunsanwo was deliberately indifferent on February 23, 2012 because he did not evaluate Dang until three and a half hours after Densmore first requested the evaluation and failed to call 911,[3] allegedly causing a 40 minute

---

[2] Dang argues that Preston-Mayle's recollection of the February 23, 2012 encounter contrasts with Ogunsanwo's description as far as the severity of how intelligible Dang's speech was at the time of the examination. This is an immaterial discrepancy because regardless, Ogunsanwo directed staff to send Dang to the ER.

[3] Dang initially made the argument to the lower court that he was in the infirmary during the night of February 20, 2012, for "at least two days," and argued that Ogunsanwo ignored him until February 23, 2012. Nurse Roberts moved Dang into the infirmary on February 20, 2012 after the "code orange" that occurred at approximately 11:15p.m. (Doc. 140-1, p.8). Ogunsanwo was not made aware that Dang was in the infirmary until the morning of February 23, 2012. (Doc. 152-1, pg.4). Ogunsanwo relied upon the nurses to notify him once an inmate was moved into the infirmary and to schedule the inmate for examination. Thus, February 22, 2012, the nursing staff would be responsible to bring Dang to Dr. Ogunsanwo for examination. The Initial Brief ignores that Dang's vitals were taken twice on February 22, 2012 and no abnormalities were noted. (Doc. 140-1, p.8). The Intiial Brief also ignores the fact that Dang was examined by Valerie Westhead, M.D. on February 21, 2012, in the same way that a primary care physician would have conducted an examination. (Doc. 148, pg. 22, 30). If Westhead had any

delay in transport to the hospital. (Initial Brief, pg. 21-22, 64-66). Dang argues that he was not seen for several hours after Densmore placed him on doctor sick call on February 23, 2012. Although Dang was placed on doctor sick call at 8:30a.m., Ogunsanwo was not notified that it was an emergency at that time. (Doc. 164-10, pg. 57-62). The lower court correctly decided that Dang did not present any evidence showing that when Densmore initially requested Ogunsanwo's attention he knew of a serious risk of harm to Dang. (Doc. 184, pg. 17). However at 11:15 a.m. Ogunsanwo was notified that Dang's condition had worsened and he needed to be seen. *Id.* The undisputed evidence is that after that, a corrections deputy removed Dang out of his cell and transported him in a wheelchair to the examination room, which took some time. (Doc. 164-10, pg. 66). Also Ogunsanwo may have been finishing with another inmate. (*Id.*). There is a complete lack of evidence to show that Ogunsanwo had subjective knowledge of, but ignored, a serious risk of harm to Dang.

Dang argues that Ogunsanwo was deliberately indifferent because he did not call 911, although Dang was transported to the emergency room that day per Ogunsanwo's order. Clearly Ogunsanwo cannot be accused of ignoring Dang's complaints or refusing to treat him. Dang argues that Ogunsanwo was deliberately

---

concerns from a medical standpoint about Dang she would have immediately notified Ogunsanwo and asked him to evaluate Dang. (Doc. 148, Pg. 64).

indifferent for failing to call 911 and just sending Dang to the ER in a patrol vehicle because there was an alleged 40 minute delay. The record evidence is that Dang was transported to the hospital on February 23, 2012 approximately 15 minutes after Ogunsanwo ordered him to be transported. (Doc. 164-10, pg. 67). The Initial Brief argues[4] that Dang was in the infirmary at 12:47p.m., 40 minutes after he was seen by Ogunsanwo. (Initial Brief, pg. 66). However, the Initial Brief is silent as to any evidence that this notation was made contemporaneously with the event. Moreover, Ogunsanwo ordered that he immediately be transported and there is no evidence that the delay can be attributed to Ogunsanwo's personal actions. Assuming arguendo that Dang was still in the infirmary 40 minutes later, based upon the circumstances, this delay does not amount to cruel and unusual punishment. There is a complete absence of evidence to show that the alleged 40 minute delay caused Dang's injury. The Initial Brief does not cite any cases that support that a 40 minute delay under these circumstances amounts to a constitutional violation. Ogunsanwo did not violate clearly established law by failing to call 911, and therefore the district court properly granted qualified immunity.

C. *Knowledge Of Dang's Alleged Deteriorating Condition Cannot Be Imputed To Ogunsanwo*

---

[4] It should be noted that the Appellant's citation for this assertion does not appear to be related.

Dang also requests that actual knowledge of Dang's deteriorating condition should be inferred to Ogunsanwo because 1) a history and physical was sent to Ogunsanwo, and 2) he approved a standing order to monitor Dang's blood pressure because he had been "running a fever" as of February 13, 2012. (Initial Brief, pg. 19-20, 64-66). Dang asserts that Preston-Mayle *sent* the History and Physical Form to Ogunsanwo on February 7, 2012. (Initial Brief, pg.14). Ogunsanwo relied upon the nurse conducting the history and physical to place the inmates on doctor sick call if any abnormality was noted. (Doc. 152-1, pg.2). Ogunsanwo was not made aware of any abnormalities associated with Dang's history and physical. (*Id.*). The Initial Brief asserts that, "Ogunsanwo agreed that, at the time of the history and physical...Dang was continuing to have neck pain and headaches despite taking the Robaxin, ibuprofen, and Motrin, and said his 'head was hurting so bad.'"(Initial Brief, pg. 19). This argument is misleading as it improperly infers that Ogunsanwo was aware of these continuing symptoms at the time of the history and physical, which is not true. The undisputed evidence is that Ogunsanwo did not *review* the History and Physical Form until March 23, 2012. (Doc. 152-1, pg.4). A closer review of the cited record excerpt upon which Dang relies upon reveals that Ogunsanwo made this statement during his deposition, after he was provided the History and Physical Form and asked to comment about Preston-Mayle's notes. (Doc. 147, pg. 46-49, 63-64). Therefore, although Ogunsanwo

agreed that the History and Physical Form states that Dang was experiencing these symptoms, there is an absence of evidence to show that Ogunsanwo was aware *at the time* that Dang expressed the complaints. Even accepting Dang's misinterpretation of the record evidence as true, if Ogunsanwo was aware that Dang was continuing to experience similar complaints of pain, Ogunsanwo had just examined Dang six days prior on February 1, 2012 (Doc. 166, p.6). Therefore, this would not create a disputed issue of material fact as to whether he knew of a substantial risk or had subjective knowledge of Dang's alleged need for medical care for a serious medical condition.

The Appellant argues that on February 13, 2012, "Ogunsanwo approved an order for blood pressure checks twice a day due to the fact that Dang was 'running a fever.'" (Initial Brief, pg.19). However, the order approving blood pressure monitoring was simply a pop-up message on the computer that did not provide the doctor with knowledge of any substantial risk to the inmate. If the nurse monitoring Dang's blood pressure identified abnormal findings recorded, the protocol would be for Dang to be placed on doctor sick call and examined by Ogunsanwo. The medical records reveal that Dang's fever only exceeded 100.4 on February 9, 2012, just one occasion during his incarceration. (Doc. 130-1, p.18). Ogunsanwo was not consulted or informed about the fever. (Doc. 164-11, p. 61). Assuming arguendo that Ogunsanwo's approval of the standing order to monitor

Dang's blood pressure informed him that Dang had a fever on February 13, 2012, this does not establish that he had subjective knowledge that Dang had a need for medical care for a serious medical condition. A low-grade fever may not be an indicator of a serious harm.

II. DANG'S RIGHTS WERE NOT CLEARLY ESTABLISHED IN THE ELEVENTH CIRCUIT

Even assuming arguendo that Ogunsanwo is found to have had knowledge of Dang's alleged deteriorating condition, his actions would not amount to deliberate indifference under the law. *See Popoalii v. Corr. Med. Servs.,* 512 F.3d 488, 500 (8th Cir. Mo. 2008); *Kruse v. Williams,* 592 Fed. Appx. 848, 858-59 (11th Cir. Dec. 4, 2014) (per curiam). Qualified immunity protects government officials sued in their individual capacities, so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan,* 129 S.Ct. 808, 815 (2009); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727 (1982). When considering whether or not a right is clearly established a court should look at precedent from the Supreme Court of the United States and the eleventh circuit. *McClish v. Nugent,* 483 F. 3d 1231, 1237 (11th Cir. 2007). Dang cannot identify an Eleventh Circuit case that holds that a physician treating a detainee's complaints of neck and back pain, headaches, and a low grade fever with ibuprofen and a muscle relaxant violates the Fourteenth Amendment. Precedent also does not establish that

Ogunsanwo's failure to diagnose the Plaintiff sooner with cryptococcal meningitis violated Dang's constitutional rights. The Plaintiff relies upon *Carswell v. Bay County*, 854 F.2d 454 (11th Cir. 1988); *Ancata v. Prison Health Services*, 769 F.2d 700 (11th Cir. 1985); *Mandel v. Doe*, 888 F.2d 783 (11th Cir. 1989); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999) as precedent that Dr. Ogunsanwo acted deliberately indifferent to the Plaintiff's risk of serious harm. These cases are factually distinct in that the medical professionals were subjectively aware of much more egregious facts than Dr. Ogunsanwo. *Carswell*, 854 F.2d at 455 (over the course of eleven weeks the inmate lost 53 pounds, never seen by a physician and only seen by a physician assistant on two occasions, all while the physician assistant was informed of his deteriorating condition); *Ancata*, 769 F.2d at 702 (inmate died after displaying a variety of serious medical symptoms and was refused a referral to a specialist without a court order and payment of the cost); *Mandel*, 888 F.2d at 783 (refusal to x-ray an inmate's leg even though the inmate could not walk); *McElligott*, 182 F.3d at 1248 (despite severe abdominal pain and weight loss, and possible cancer diagnosis, the doctor only ordered a CT scan and a chest x-ray). Ogunsanwo's actions were not akin to the actions of the medical professionals in the Appellant's cited cases and thus, the cases do not provide established law that would have advised Ogunsanwo that his actions were unconstitutional. Although an official who intentionally delays providing medical

19

care to an inmate, knowing that the inmate has a serious medical condition that could be exacerbated by delay, acts with deliberate indifference, this general rule did not apply "with obvious clarity to the specific conduct in question." *Andujar v. Rodriguez*, 486 F.3d 1199, 1205 (11th Cir. Fla. 2007); *United States v. Lanier*, 520 U.S. 259, 271 (1997). The Appellant cannot show that Ogunsanwo knew that Dang's transportation to the emergency room would be delayed for forty minutes, instead of being transported as soon as possible, as Ogunsanwo originally ordered. Also, Dang cannot identify any controlling law that placed Ogunsanwo on notice that ordering Dang's immediate transport to the hospital via Sheriff's patrol vehicle, instead of 911, violated Dang's Fourteenth Amendment rights. Ogunsanwo was not deliberately indifferent to a known serious medical condition, his actions were objectively reasonable, and he did not violate Dang's constitutional rights.

III. THE DISTRICT COURT CORRECTLY APPLIED THE WELL-SETTLED STANDARD OF DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS OF A PRETRIAL DETAINEE

The Appellant erroneously proposes that the *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2468 (2015), changed the appropriate deliberate indifference standard in medical care cases to a new, objective indifference standard. (Initial Brief, pg. 42-50). However, the district court correctly determined that "*Kingsley* did not alter the standard applicable to medical care claims." (Doc. 184, pg. 11). *Kingsley* is

limited to excessive force cases. In *Kingsley,* the Court ruled that in order to prove a 42 U.S.C. § 1983 excessive force claim, a pretrial detainee must show only that the defendant officer's use of force was objectively unreasonable, not that the defendant officer was subjectively aware that the use of force was unreasonable. *Id.*at 423. Thus, while *Kingsley* may have a significant effect on cases involving excessive force applied to pretrial detainees, it does not impact the standard applied to the case at bar, as it does not involve allegations of excessive force. The Initial Brief concedes that *Kingsley* did not involve claims of deficient medical care to pretrial detainees, but then concludes that the opinion should be broadly applied to all claims of pretrial detainees involving alleged violations of the Fourteenth Amendment. The *Kingsley* opinion does not provide authority for the Appellant's position. The Supreme Court's intent to limit the *Kingsley* opinion is evident because the opinion explicitly acknowledges that "the objective standard is appropriate in the context of *excessive force claims* brought by pretrial detainees pursuant to the Fourteenth Amendment." (emphasis added).

The Appellant's reliance upon *Castro v. County of Los Angelos,* 797 F.3d 654 (9th Cir. 2015), *Johhnson v. Clafton,* 2015 WL 5729080 (E.D. Michigan, Sept. 30, 2015), *Saetrum v. Raney,* 2015 WL 4730293 (D. Idaho, Aug. 7, 2015). There is ample caselaw from other jurisdictions that support the Appellee's argument that *Kingsley* does not extend to all Fourteenth Amendment due process claims,

including a due process claim regarding jail medical care. See *Davis v. Wessel*, 2015 U.S. App. LEXIS 11685 (7th Cir. Ill. July 7, 2015) (finding the *Kingsley* case was "instructive" to the due process analysis, but not directly applicable and ultimately requiring the plaintiff to prove subjective intent); *Kennedy v. Bd. of Cnty. Comm'rs for Okla. Cnty.*, 2015 U.S. Dist. LEXIS 87155 (W.D. Okla. July 6, 2015)(applying the deliberate indifference standard and finding that *Kingsley* does not alter the standard applicable to medical care claims); *Roberts v. C-73 Med. Dir.*, 2015 U.S. Dist. LEXIS 91072 (S.D.N.Y. July 13, 2015)(applying the deliberate indifference standard and finding that *Kingsley* was limited to excessive force claims); *Gilbert v. Rohana*, 2015 U.S. Dist. LEXIS 144134 (S.D. Ind. Oct. 23, 2015)(finding *Kinglsey* did not alter the legal standard for denial of medical treatment claims brought by pretrial detainees because *Kingsley* was limited to excessive force claims). Therefore, the Appellant's misplaced argument that *Kingsley* changed the applicable standard in the present case must fail.

## CONCLUSION

For the foregoing reasons, this Court should affirm the grant of summary judgment to the Appellee, Olugbenga Ogunsanwo, M.D. based upon

qualified immunity.

Respectfully submitted,

Bruce R. Bogan, Esquire
Florida Bar No. 599565
Melissa J. Sydow, Esquire
Florida Bar No. 39102
Hilyard, Bogan & Palmer, P.A.
Post Office Box 4973
Orlando, FL 32802-4973
Telephone: 407-425-4251
Facsimile: 407-841-8431
E-Mail: bbogan@hilyardlawfirm.com
E-Mail: msydow@hilyardlawfirm.com
Attorney for Appellee Ogunsanwo

## CERTIFICATE OF COMPLIANCE REQUIRED BY FRAP 32(a)

I certify that this Brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). This Brief contains 7,183 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and 11th Cir. R. 32-4. Additionally, the Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), and has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 font size.

Bruce R. Bogan, Esquire
Florida Bar No. 599565

Melissa J. Sydow, Esquire
Florida Bar No. 39102
Hilyard, Bogan & Palmer, P.A.
Post Office Box 4973
Orlando, FL 32802-4973
Telephone: 407-425-4251
Facsimile: 407-841-8431
E-Mail: bbogan@hilyardlawfirm.com
E-Mail: msydow@hilyardlawfirm.com
Attorney for Appellee Ogunsanwo

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of February 2016, I sent a paper copy of the forgoing via FedEx tracking number 8073 1605 8801 and also electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notice of electronic filing to the following: Counsel for Appellant Melissa H. Powers, Esquire/Daniel W. Cotter, Esquire/Steven R. Maher, Esquire, The Maher Law Firm, P.A., 631 West Morse Boulevard, Suite 200, Winter Park, FL 32789; Counsel for Appellant, Matthew P. Farmer, Esquire, Farmer & Fitzgerald, P.A., 102 West Whiting Street, Suite 501, Tampa, FL 33602; Counsel for Appellees, Sheriff Donald F. Eslinger, Wilt and Preston-Mayle, D. Andrew DeBevoise, Esquire, DeBevoise & Poulton, P.A., 1035 South Semoran Boulevard, Suite 1010, Winter Park, FL 32792; and Counsel for Appellees Scott, Roberts and Densmore, John M. Green, Jr., Esquire/Linda L. Winchenbach, Esquire, John M. Green, P.A., 125 N.E. First Avenue, Suite 2, Ocala, FL 34470.

Bruce R. Bogan, Esquire
Florida Bar No. 599565
Melissa J. Sydow, Esquire
Florida Bar No. 39102
Hilyard, Bogan & Palmer, P.A.
Post Office Box 4973
Orlando, FL 32802-4973
Telephone: 407-425-4251
Facsimile: 407-841-8431
E-Mail: bbogan@hilyardlawfirm.com
E-Mail: msydow@hilyardlawfirm.com
Attorney for Appellee Ogunsanwo