IN THE UNITED STATES COURT OF
APPEALS FOR THE ELEVENTH
CIRCUIT

APPEAL NO. 15-14842-D

NAM DANG, by and through his
Power of Attorney, VINA DANG,

Plaintiff-Appellant,

vs.

DONALD F. ESLINGER, in his official
capacity as the SHERIFF OF SEMINOLE
COUNTY; OLUGBENGA OGUNSANWO,
M.D.; SANDRA WILT, LPN; BRENDA
PRESTON-MAYLE, RN; ALECIA SCOTT,
LPN; SHARYLE ROBERTS, LPN; and
MARTHA DENSMORE, RN,

Defendants-Appellees,

On Appeal from the United States District
Court for the Middle District of Florida
Orlando Division
Case No.: 6:14-cv-37-Orl-31TBS
Gregory A. Presnell, United States District Judge

## REPLY BRIEF OF APPELLANT

Matthew P. Farmer, Esq.
501 W. Whiting Street, Suite 501
Tampa, FL 33602
(813)228-0095; FAX(813)224-0269

Melissa H. Powers, Esq.
631 W. Morse Blvd., Suite 200
Winter Park, FL 32789
(407)839-0866; FAX(407)425-7968

COUNSEL FOR APPELLANT

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES................................................... iii

ARGUMENT.................................................................. 1

### I.

THE TRIAL COURT ERRED IN GRANTING THE INDIVIDUAL
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
ON THEIR AFFIRMATIVE DFENSES OF QUALIFIED
IMMUNITY.................................................................. 1

    A. *Kinsgley* has clarified the standard for a Pretrial
    Detainee's Due Process Claim brought under the
    Fourteenth Amendment...................................... 1

    B. Prior emergency room visit................................ 4

    C. A genuine issue of material fact exists as to whether
    Nam Dang had a serious medical need................... 9

    D. A genuine issue of material fact exists as to whether
    Appellees had knowledge of Plaintiff's serious
    medical need and acted with deliberate indifference... 9

    E. Appellees' reliance on the testimony and assessment
    by Dr. Westhead is misplaced and ignores evidence
    that puts her testimony and records in dispute........... 16

    F. Appellees' argument that Nam Dang was alert,
    oriented and voiced no complaints while in the
    medical unit ignores record evidence to the contrary... 18

G. There is a genuine issue of material fact as to the delay in transporting Nam Dang to the emergency room on February 23, 2012.................................. 20

H. Appellee Scott refuses to consider evidence that she was present during the Code Orange on February 20, 2012............................................... 21

I. Appellees ignore record evidence describing Nam Dang's condition in the last few days of his detainment at John E. Polk Correctional Facility........ 22

## II.

THE TRIAL COURT ERRED IN GRANTING
SUMMARY JUDGMENT TO DONALD F.
ESLINGER, in his official capacity as the
SHERIFF OF SEMINOLE COUNTY ON
THE 42 U.S.C. § 1983 MUNICIPAL LIABILITY
CLAIM................................................................ 23

A. Appellant correctly asserted that the lower court erred in granting summary judgment as against the Sheriff under a *Monell* theory and requested that the matter be reversed and remanded back to the lower court for consideration.

CONCLUSION.................................................. 25

CERTIFICATE OF COMPLIANCE..................... 26

CERTIFICATE OF SERVICE............................. 28

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Adams v. Poag,* 61 F.3d 1537 (11th Cir., 1995)..............................................13

*Ancata v. Prison Health Services,* 769 F.2d 700
(11th Cir., 1985)...........................................................................12,15

*Berry v. Peterman,* 604 F.3d 435, (7th Cir., 2010)...............................11,15

*Brown v. Johnson,* 387 F.3d 1344 (11th Cir. 2004)...............................9

*Carswell v. Bay County,* 854 F.2d 454 (11th Cir. 1988)................. 9,10,12,15

*Castro v. County of Los Angeles,* 797 F. 3d 654 (9th Cir. 2015)................2

*Collins v. Al-Shami,* 2015 WL 5098533 (S.D. Ind.,
Aug. 31, 2015, Case No. 13-01838, (Doc.111, p. 13-14))......................3

*Dobbey v. Mitchell-Lawshea,* 806 F.3d 938, (7th Cir.) 2015.....................11,15

*Gilmore v. Hodges,* 738 F.3d 266 (11th Cir. 2013)....................................9

*Howell v. Evans,* 922 F.2d 712 (11th Cir., 1991)..................................13

*Howell v. Evans,* 931 F.2d 711, 712 (11th Cir. 1991)..........................13

*Johnson v. Clafton,* 2015 WL 5729080 (E.D. Mich.,
Sept. 30, 2015, Case No. 13-14922...............................................3

*Kingsley v. Hendrickson,* __ U.S. ___, 135 S. Ct. 2466
(2015)..........................................................................1,2,3,4

*Kruse v. Williams,* 592 Fed. Appx. 848 (11th Cir. 2014).....................12,13

*Mandel v. Doe,* 888 F.2d 783 (11th Cir., 1989).............................12,15

*McElligott v. Foley,* 182 F.3d 1248 (11th Cir. 1999)..................10,11,12,13,15

*Popoalii v. Correctional Medical Services,* 512 F.3d 488
(8th Cir. 2008)..............................................................12,13

*Saetrum v. Raney,* 2015 WL 4730293 (D. Idaho, Aug. 7,
2015, Case No. 13-425 (Doc. 142))...........................................3

*Thomas v. Sheahan,* 499 F.Supp.2d 1062 (N.D. Ill., 2007)..................9

*Waldrop v. Evans,* 871 F.2d 1030 (11th Cir., 1989)......................14

**ARGUMENT**

**I.**

THE TRIAL COURT ERRED IN GRANTING THE INDIVIDUAL DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ON THEIR AFFIRMATIVE DFENSES OF QUALIFIED IMMUNITY.

**A. *Kinsgley* has clarified the standard for a Pretrial Detainee's Due Process Claim brought under the Fourteenth Amendment.**

As a threshold issue, appellant contended in the trial court and in his Initial Brief that the United States Supreme Court's opinion in *Kingsley v. Hendrickson,* ___ U.S. ___, 135 S. Ct. 2466 (2015), which held that the Fourteenth Amendment Due Process standard applicable to a pretrial detainee contending that officials used excessive force against him, applies as well to a pretrial detainee, like Dang, who argues that he received constitutionally inadequate medical care. In response, the appellees contend that, as applied to the constitutional claims of pretrial detainees, no single, consistent Fourteenth Amendment standard exists. While a pretrial detainee alleging excessive force need only satisfy an objective reasonableness standard, appellees argue, the same pretrial detainee who alleges inadequate medical care must continue to satisfy the same heightened, and subjective, deliberate indifferent standard that applies to the Eighth Amendment.

In the wake of *Kingsley,* the lower courts have begun to consider its applicability to pretrial detainees' medical claims, as well as other Fourteenth

1

Amendment claims outside the limited context of excessive force. In *Castro v. County of Los Angeles,* 797 F. 3d 654 (9th Cir. 2015), for instance, the panel addressed a pretrial detainee's Fourteenth Amendment claim that officials failed to protect him from harm from fellow detainees. In dissent, Judge Graber found that *Kingsley* rejects the deliberate indifference standard for all Fourteenth Amendment claims, not merely excessive force claims, for pretrial detainees. Subsequently, the *Castro* panel ordered the parties to file supplemental briefs "on the question whether a Fourteenth Amendment deliberate indifference claim is governed by an objective or subjective knowledge standard and whether the County of Los Angeles had the requisite level of knowledge to support a finding of deliberate indifference on the part of a municipality." (9th Cir., Case No. 12-56829, Doc. 58, Sept. 17, 2015)(available through PACER). The Ninth Circuit vacated the panel opinion and granted rehearing *en banc,* (9th Cir., Case No. 12-56829, Doc. 65, Dec. 28, 2015)(available through PACER), and oral argument was conducted March 22, 2016 (9th Cir., Case No. 12-56829, Doc. 92, Mar. 22, 2016)(available through PACER).

As the parties recognize, three district courts to date have observed that *Kingsley* may well apply to the constitutionally inadequate medical care claims of pretrial detainees, but have not resolved the issue. Each case held that resolution of the issue is unnecessary because the defendant would have prevailed on

2

summary judgment even under the less onerous *Kingsley* objective reasonableness standard. *See Johnson v. Clafton,* 2015 WL 5729080 (E.D. Mich., Sept. 30, 2015, Case No. 13-14922, (Doc. 31, p. 9)(available through PACER)(noting, "The court need not resolve or wrestle further with this thorny issue.") *See also Collins v. Al-Shami,* 2015 WL 5098533 (S.D. Ind., Aug. 31, 2015, Case No. 13-01838, (Doc.111, p. 13-14))(available through PACER), notice of appeal filed, ("Based on [*Kingsley*], Mr. Collins argues that Fourteenth Amendment claims of inadequate medical care are now analyzed using the objectively reasonable standard, not the heightened deliberately indifferent standard. *Mr. Collins' position is well-taken*; however, the Court need not address whether *Kingsley* requires that the objectively unreasonable standard be used in this case because under either standard – deliberate indifference or objective unreasonableness – Mr. Collins' claims cannot survive summary judgment.") In *Saetrum v. Raney,* 2015 WL 4730293 (D. Idaho, Aug. 7, 2015, Case No. 13-425 (Doc. 142))(available through PACER), the district court observed that, in *Kingsley,* "a recent Supreme Court decision calls into question whether it is appropriate to borrow the Eighth Amendment standard when the claim is brought by an arrestee, not a convicted prisoner, and whether the Due Process Clause may afford greater protection than the Eighth Amendment." *Saetrum,* at Doc. 142, p. 26, n. 5. Further, according to the *Saetrum* court, "The court need not resolve this issue, however, because it appears there would be little

3

practical difference between whether an arrestee's or pretrial detainee's medical needs claim is examined under a test akin to that in *Kingsley* or the deliberate indifference standard from the Eighth Amendment." *Id.* Finally, "*Kingsley may suggest that courts should not borrow from the Eighth Amendment to assess a medical needs claim by an arrestee or pretrial detainee*." *Id.* at p. 29- 30, n. 6 (emphasis added).

These courts recognize that a constitutional standard – in this case the Fourteenth Amendment Due Process standard for pretrial detainees – is not malleable, depending on the specific nature of the claim. Instead, constitutional standard is just that – a standard. The single, consistent standard for pretrial detainees alleging a violation of the Fourteenth Amendment is objective reasonableness. The district court erred by failing to apply *Kingley* to a claim by a pretrial detainee alleging inadequate medical care.

**B. Prior emergency room visit.**

In their respective Answer Briefs, all appellees rely heavily upon evidence that Nam Dang failed to advise the jail medical staff of the fact that he was previously seen in the emergency room on January 12, 2012. This reliance is misplaced and moreover does not negate the fact that there is a genuine dispute of fact as to the deliberate indifference of the jail staff regarding Dang.

Nam Dang, went to the emergency room on January 12, 2012 due to complaints including a headache. He was examined and a CT scan of his brain was done after contacting Nam's father to get credit card information and a payment for the CT scan as Nam did not have health insurance. (Doc. #164, Exhibit 21, Cuong Dang Depo., p. 23, l. 19 – p. 25, l. 11.) The CT scan and his lab work came back normal. (Doc. #164, Exhibit 22) He was given a dose of a powerful pain reliever, morphine, at approximately 22:13 (10:13 p.m.). (Doc. #164, Exhibit 22) While under the effects of morphine, this discussion of whether to do a lumbar puncture was done and Dang signed paperwork at 23:10 (11:10 p.m.) saying he did not want to do the procedure. (Doc. #164, Exhibit 22.) No one at the hospital discussed the lumbar puncture with Nam's father when they spoke to him on the phone. (Doc. #164, Exhibit 21, Cuong Dang Depo., p. 25, ll. 12-16.) The discharge instructions given to Dang from that emergency room visit state that he had a simple headache and that it "did not appear to be a sign of any serious illness". (Doc. #164, Exhibit 22) The discharge instructions advised that if his condition worsened, he was to seek further medical care. (Doc. #164, Exhibit 22)

Once he was taken into custody by the Seminole County Sheriff on January 26, 2012 and his condition consistently worsened, Dang followed the instructions given to him in the emergency room and sought medical care through each avenue available to him at the John E. Polk Correctional Facility. As illustrated in the

record evidence detailed in the Initial Brief, Dang first requested a nurse sick call on January 29, 2012. Next, he conveyed his complaints to the physician during a doctor sick call visit on February 1, 2012. Shortly thereafter on February 7, 2012 Nam expressed his worsening symptoms to Nurse Preston-Mayle during the history and physical. Two days later when the pain was continuing and not getting better, Nam sought care through an emergency walk-in visit only to be told there was nothing more that could be done for him and subsequently punished him by sending him to segregation without any medical evaluation as required and to have him evaluated by mental health despite the fact that Nurse Scott described him as appearing and acting "normal". Eleven days later, on February 20, 2012, a "code orange" was called due to Nam's serious condition and need for emergency medical attention. At this point, Nurse Roberts evaluated him and decided he was faking symptoms. Her response was to refer him to mental health. After being cleared of any psychiatric issues on February 21, 2012, Nurse Roberts ignored Nam during the subsequent night shift and never checked on him as she was required to do. Even when Dang was admitted into the infirmary he was ignored. At this point he was unable to effectively communicate and was at the mercy of the medical staff that continued to let him languish in pain. At every point of access to medical care at the jail, Dang was treated with indifference despite his pleas for help.

6

Appellees attempt to argue that had Dang only told the staff about his emergency room visit they would have treated him differently. The jail staff knew that they may not get complete information from inmates yet never asked a single question about prior treatment for his headaches. (Doc. #143, Preston-Mayle Depo, at. 21, l. 21 – p. 22, l. 3) Instead, they wholly accepted the diagnosis of a LPN that his pain was due to being "beat up by the cops" despite the fact that she was not authorized nor trained to make such a nursing diagnoses.

In its summary judgment ruling, the lower court improperly gave great weight to the fact that Dang did not advise Nurse Wilt, Nurse Preston-Mayle and Dr. Ogunsanwo of his emergency room visit either independently or in response to specific questions as reflected in the jail medical record. The lower court failed to address the fact that Defendants, Wilt, Preston-Mayle, Ogunsanwo and the Sheriff were not entitled to an affirmative defense for failure to mitigate damages. (Doc. 80)

Moreover, the Appellees ignore record evidence and reasonable inferences in light most favorable to Dang that the emergency room staff found no abnormalities on the head CT scan or laboratory values, that Dang was offered the lumbar puncture only AFTER being given a dose of a powerful painkiller, morphine, and that he was instructed at discharge that he had a simple headache and that it "did not appear to be a sign of any serious illness". In addition, the

7

history and physical form only shows that the question asked of Nam Dang on February 1, 2012 was whether he had any recent hospitalizations (not emergency room visits) to which he appropriately answered "no". During the initial intake on January 26, 2012 he was asked if he had any emergency room visits "in the last 12 hours" to which he also appropriately answered "no." Nam Dang is entitled to the reasonable inference that he believed his headaches were not the result of any serious medical condition as he was informed by the emergency room and therefore there was no reason to share that information with the health care providers at John E. Polk.

Given the lack of the appellees' legal affirmative defense and the reasonable inferences that can be drawn in the light most favorable to Dang, it was error for the Court to accept the appellees' version of the facts regarding the emergency room visit and ignore the evidence that puts that in dispute and/or raises inferences in favor of Dang. Nevertheless, the fact that Nam's condition was clearly deteriorating while a detainee at John E. Polk is clearly supported by the evidence and that is the basis of the claim asserted.

The critical issue in this case is about the appellees' deliberate indifference of Nam's need for medical care in general, not their failure to diagnose cryptococcol meningitis or even meningitis in general. The information about the lumbar puncture may have some relevance to the process of diagnosing

8

meningitis, it does not, however, change the fact that Nam presented with continuous and worsening symptoms of pain, bizarre behavior and neurological changes that went ignored to the point that he was slumped over in a wheelchair, nonverbal and drooling.

**C. A genuine issue of material fact exists as to whether Nam Dang had a serious medical need.**

The issue of whether Dang had a serious medical need was not contested at the summary judgment phase and the lower court correctly assumed that Nam Dang suffered an objective serious medical need. (Doc. 184, p.11). Meningitis and/or symptoms associated with meningitis are in fact objectively serious. See *Thomas v. Sheahan*, 499 F.Supp.2d 1062 (N.D. Ill., 2007). See also, *Gilmore v. Hodges*, 738 F.3d 266 (11th Cir. 2013); *Brown v. Johnson*, 387 F.3d 1344 (11th Cir. 2004).

**D. A genuine issue of material fact exists as to whether appellees had knowledge of Nam Dang's serious medical need and acted with deliberate indifference.**

Despite the appellees' assertions to the contrary, the issue is not whether the nurses and physician had subjective knowledge of Nam Dang's meningitis; rather, it is whether they had subjective knowledge of his need for medical care. *Carswell v. Bay County*, 854 F.2d 454 (11th Cir. 1988). Plaintiff has identified sufficient facts through the record evidence that establish that Nam Dang was suffering from

9

head and neck pain, headaches, stiff neck and an increased temperature or fever throughout his entire detainment. Moreover, those complaints were worsening in severity.

As discussed more fully in the Initial Brief, the nurses and doctor each had independent knowledge of his condition and that he was deteriorating.[1] In *Carswell v. Bay County*, 854 F.2d 454 (11th Cir. 1988), the subjective knowledge element was satisfied even though the jail medical staff did not diagnose nor were they aware that the detainee had diabetes. *Carswell*, 854 F.2d at 457. Similarly, in the case of *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999), the Eleventh Circuit concluded that a jail physician and nurse had subjective knowledge of a detainee's serious medical needs when he made complaints of severe pain that were not resolved through the minimal treatment and continued to worsen. Similar to the instant case, this finding was made despite the fact that the *McElligott* defendants did not diagnose nor did they know that he had cancer. Specifically the *McElligott* court stated:

> Although Dr. Foley did not diagnose Elmore's condition as cancer and did not know that he had cancer, a jury could find that Dr. Foley and Wagner were aware of the tremendous pain and illness that Elmore was suffering from at the very outset of his incarceration. Dr. Foley's examinations, infrequent as they were, as well as Elmore's nearly constant complaints about the pain he was having, addressed to both Dr. Foley and nurse Wagner, were

---

[1] Appellant has presented the record evidence and appropriately outlined his argument specific to each individual defendant/appellee.

sufficient to create a question for the jury whether Foley and nurse Wagner were aware of a substantial risk of harm to Elmore.

*Id.* at 1256. The *McElligott* court found that the both the jail physician and nurse were aware that the detainee was "vitally in need of medical treatment to address his pain" and that a reasonable jury could conclude that they acted with deliberate indifference as to his "need for further diagnosis of and treatment for the severe pain he was experiencing". *Id.* at 1256-57.

"Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to the prisoner exists, but that defendant disregards that risk." *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010) (Citations omitted.) In *Berry*, the Seventh Circuit Court of Appeals held evidence from which a reasonable jury could infer that the doctor and nurse acted with deliberate indifference toward his condition by persisting in an easy but ineffective course of treatment that subjected him to two months of serious but avoidable pain was sufficient to preclude summary judgment. *Id.* at 437-438. Similarly, in the recent case of *Dobbey v. Mitchell-Lawshea, et al.*, 806 F.3d 938 (7th Cir. 2015), the Seventh Circuit determined summary judgment was improper when the trial court failed to "attach sufficient weight to the slack response of prison staff" to an inmate's medical problem. *Id.* at 940.

11

In an attempt to avoid the legal precedent of the 11th Circuit as set forth in *McElligott, Carswell, Mandel,* and *Ancata,* appellees rely upon the cases of *Kruse v. Williams,* 592 Fed. Appx. 848 (11th Cir. 2014) and *Popoalii v. Correctional Medical Services,* 512 F.3d 488 (8th Cir. 2008), to support their argument that summary judgment was appropriate. However, these cases are clearly distinguishable from the instant action.

In the *Popoalii* case, the inmate was not a pretrial detainee, thus the claims were brought under the Eighth Amendment, not the Fourteenth. While appellees argue the standard is the same under either the Eight or Fourteenth Amendment, as discussed more fully above, the U.S. Supreme Court has clarified that position and held that the standard for a due process claim made under the Fourteenth Amendment by a pretrial detainee is in fact different and must be considered under an objective reasonableness standard. Moreover, the claims made in the *Popoalii* case appear to be focused on the failure to diagnose the inmate's cryptococcal meningitis. That is simply not the case here. Appellant is not asserting that the appellees failed to diagnose Nam Dang with crytococcoal meningitis, rather, it is based on a theory that acted with deliberate indifference as to his "need for further diagnosis of and treatment for the severe pain he was experiencing". *McElligott* at 1256-57.

The *Kruse* case is also clearly distinguishable in that, similar to a medical malpractice claim, it was based on a theory that the medical care provided to the inmate was deficient. The court specifically points out that the appellant did not assert a claim based on a delay in providing care or not providing care at all. In this action, appellant has asserted his claim based the delay in providing necessary care as well the failure to do anything for Nam Dang despite knowing his condition was serious and deteriorating.

Appellees, Scott, Roberts and Densmore also cite to the *Howell v. Evans* and *Adams v. Poeg* cases in an effort to distinguish the precedent cited by appellant. However, these cases are also factually different that the instant case. First, in both cases, as in the *Popoalii* case, the inmate was not a pretrial detainee, thus the claims were brought under the Eighth Amendment, not the Fourteenth. Additionally, in the *Howell* case, the opinion cited to by appellees, Scott, Roberts and Densmore (see Answer Brief, p.62) was vacated on April 29, 1991. *Howell v. Evans*, 931 F.2d 711, 712 (11th Cir. 1991) and cannot be relied upon. In the *Adams* case, the court ultimately determined that there was no prior case law showing the conduct at issue was unlawful. To the contrary, in this case, the prior case law clearly stated that the conduct at issue pertaining to Nam Dang was unlawful, especially with regard to the *McElligott* case. Moreover, even if one were to assume that appellees believed that Nam Dang's condition was not as severe as it

objectively appeared, whether because they thought his complaints were attributable to his earlier encounter with law enforcement when he was slammed to the ground or that he was faking his symptoms, subjective good faith is not necessarily sufficient to create qualified immunity. *Waldrop v. Evans*, 871 F.2d 1030, 1036 (11th Cir. 1989).

Appellant proffered sufficient record evidence to support a finding and/or inference that each individual appellee was "on notice" of Nam's serious condition and/or that his condition was deteriorating. Such evidence includes the facts that the arresting officers were told Nam Dang was sick and assured his mother that he would be treated at John E. Polk Correctional Facility; that Nurse Wilt did not take vital signs despite testifying that she typically would have with the combination of symptoms Nam presented with and further that she was evaluating, set forth a nursing diagnosis and plan of treatment which are all actions well outside the scope of her licensure as a LPN in the state of Florida; that Dr. Ogunsanwo was aware of Dang's history of headaches, neck pain and further was made aware that he was running a fever yet did nothing to address his change in condition and/or worsening of symptoms; that Dr. Ogunsanwo ignored Nam while he was in the infirmary for at least two days and even when advised he needed to be seen after Nurse Densmore's rounds at 8:30 a.m. on February 23, 2012 and further told that his condition has worsened at 11:15 a.m. still did not see Nam Dang until 12:07

then determined that his situation was not "dire" and he did not need to call 911; that Nurse Preston-Mayle had reviewed Dang's medical record before completing his history and physical, noted a worsening of his condition including new symptoms of blurry vision and tinnitus associated with his frequent and severe headaches and weight loss yet took no action to address that change in condition; that Nurse Scott observed Dang in severe pain and was told that pain was worsening; that despite his complaints of his pain getting worse to the point that he was clinching his fist and squinting his eyes he was sent to an isolation pod and left in confinement; that Nurse Roberts observed Dang in a wheelchair, nonverbal, passed out, drooling and noted he was sliding to the floor, yet chose to disbelieve the seriousness of his medical condition that was clearly obvious and instead documented that he was attempting to fake unconsciousness; that Nurse Densmore observed that Dang continued to worsen to the point that he could not sit upright yet did nothing to address his obvious serious medical condition.

Similar to the *McElligott, Carswell, Mandel, Ancata, Dobbey* and *Berry* cases, the record evidence proffered in this case clearly supports a determination that there is at least a question of fact as to whether each individual defendant had the requisite knowledge of Nam's serious medical need and further acted with deliberate indifference.

**E. Appellees reliance on the testimony and assessment by Dr. Westhead is misplaced and ignores evidence that puts her testimony and records in dispute.**

Appellees rely heavily upon the assessment and testimony of Dr. Valerie Westhead in their respective Answer Briefs. They essentially argue that her observations of Nam and her assessment and conclusions regarding Nam indicate that he appeared to be fine. However, Dr. Westhead's testimony and conclusions are in dispute. First, she never touched Nam during her assessment; rather she tried to communicate with him through the cell door. She described that he easily got up and walked over to the door to talk to her and communicated with no significant problem. However, Nam's cellmate in the infirmary during that time frame describes a very different situation. (Doc. #164, Exhibit 18, Affidavit of Anthony Laird) Moreover, the MRI scan of Nam's brain on February 23, 2012 showed that Nam had suffered extensive multiple acute and subacute infarcts. This means he had suffered brain injury over several days/week. Even Dr. Larsen, defense expert, opined that Nam likely suffered a stroke on February 21, 2012 and had signs of encephalitis as early as February 9, 2012. (Doc. #150, Report of Defense Expert, Dr. Larsen.) Finally, Dr. Westhead testified that she was at Nam's cell door with no correctional officers present from approximately 11:40 a.m. to 11:50 a.m. (Doc. #132, Westhead Depo.) However, the watch sheets show that a correctional officer was present to check on Nam at 11:45 a.m. and notes that they

16

did clean up, presumably after the meal which was served at 10:45 (Doc. #164, Exhibit 16) Based on this, there is no way Dr. Westhead could have been at Nam's door doing her assessment as she describes.

Throughout the lower court's summary judgment order, the assessment of Nam Dang documented by Dr. Westhead in the John E. Polk Correctional Facility record and her corresponding deposition testimony are improperly referred to and treated as undisputed fact. (Doc. #184, Order, p.7,15) To the contrary, the record evidence puts her assessment in dispute. The affidavit of Anthony Laird (who was Nam Dang's cell-mate in the infirmary), the protective watch sheets, the testimony of Sarah Agurkis, and the opinion of the **defendants' expert**, Dr. Larsen, all contradict Dr. Westhead's assessment and conclusions based thereon.

Defense expert, Dr. Larsen, opined that Nam Dang was beginning to suffer from encephalitis as early as February 9, 2012 and that Nam Dang suffered a stroke on or about February 21, 2012. (Doc. #150) Certainly a reasonable jury could conclude that Nam's ability to get up and communicate were not as Dr. Westhead describes. This inference is further supported by the affidavit of Anthony Laird who stated Nam was never able to communicate. (Doc. #164-18) Sarah Agurkis testified that when she saw Nam Dang on February 19, 2012 he was delusional and in severe pain. (Doc. 164-19, p.35, 1.8 – p.37, 1.6). Moreover, the protective watch sheets clearly contradict Dr. Westhead's testimony. Specifically,

Dr. Westhead adamantly testified that there was no correctional officer in the area while she attempted to talk to Nam Dang **through the cell door** from 11:40 a.m. – 11:50 a.m., yet the protective watch sheets show that a correctional officer was present at Nam's cell at 11:45 a.m. (Doc. #164-16) A determination of the weight and credibility of the witnesses is for the jury to assess. As such, Nam Dang is entitled to a reasonable inference that his condition was far worse on February 21, 2012 than as described by the jail employees and Dr. Westhead and, despite his serious condition, they ignored him.

### F. Appellees' argument that Nam Dang was alert, oriented and voiced no complaints while in the medical unit ignores record evidence to the contrary.

Appellees argue that Nam Dang's condition was not serious while he was in the medical until after the code orange event on February 20, 2012. Furthermore, the lower court also improperly asserted that it is undisputed that Nam Dang was alert, oriented and voiced no complaints while in the medical unit after the code orange emergency encounter. (Doc. #184, Order, p.16, 17) To the contrary, the record evidence clearly puts that fact in dispute. First, the affidavit of Anthony Laird, who was Nam Dang's cell mate in the medical unit, describes a very different picture. In his affidavit, Laird stated that

> Mr. Dang appeared intoxicated or under the influence of drugs. **Mr. Dang was unresponsive to any conversation, appeared to mumble unintelligibly and drooled on himself. Mr. Dang did not appear to be**

> able to hold his head steady or in an upright manner. **Mr. Dang also appeared to be in an extreme amount of physical discomfort.** I was never able to have any substantial conversation with Mr. Dang. During the short time I was housed with Mr. Dang I was very concerned with his health and well-being and **I informed the medical staff of my observations several times but they never did anything to help him. I got the impression from the nursing staff that they didn't care about Mr. Dang, didn't' take his condition seriously, or that he was faking being sick.**
>
> **Mr. Dang suffered from incontinence and had soiled himself while he was in the medical cell. I never saw Mr. Dang stand up or walk on his own.** I do not recall Mr. Dang ever leaving his bed while we were in the same medical cell together. Mr. Dang never got out of his bed/bunk ("the boat") while he was house in the cell. He never walked to the door to talk to any medical personnel. **Mr. Dang was unable to communicate with me and I did not hear him communicate with any of the medical staff.** I never observed any medical personnel attending to or checking on the status of Mr. Dang while he was housed in my medical cell other than coming in to the cell to check his vital signs once in a while, but they had to do that form his bunk/bed on the floor. [Emphasis added.]

(Doc. #164-18).

Nurse Densmore testified that, because of his behavior, she thought Nam Dang was going through withdrawals. (Doc. #164-10, p.81, ll. 16-18) This is consistent with Laird's description of Nam's condition. (Doc. #164-18). Appellant also submitted evidence of Sarah Agurkis who visited Nam Dang shortly before the code orange incident and described him as being delusional and in

severe pain. (Doc. 164-19, p.35, l.8 – p.37, l.6) This evidence alone puts in dispute the status of Nam Dang's condition during this critical time period. [2]

The fact that Nam Dang reportedly did not "voice any complaints" very likely was due to the fact that he had suffered a stroke (as opined by defense expert Dr. Larsen and confirmed by the MRI taken at Central Florida Regional Medical Center on February 23, 2012 which showed both acute and **subacute** infarcts) and was unable to speak.[3] Nam Dang is entitled to a reasonable inference that based on his version of the facts, he required more than cursory care of checking vital signs and was denied the emergent medical care he desperately needed. Moreover, according to Appellant's version of the facts, he was in "extreme physical discomfort" and "severe pain" yet nothing was done by the medical staff.

### G. There is a genuine issue of material fact as to the delay in transporting Nam Dang to the emergency room on February 23, 2012.

Appellee, Ogunsanwo, continues to ignore evidence that there was more than a fifteen (15) minute delay in transporting Nam Dang to the emergency room on February 23, 2012. First, whether a 15 minute delay is enough to establish deliberate indifference is a question of fact which should have been left for the

---

[2] The same nurse's note on February 21, 2012 at 7:53 a.m. cited by appellees was also cited by appellant in his Initial Brief (IB, p. 32) as that note states that the nurse provided total care for Nam Dang's activities of daily living. This is not consistent with the perception of Nam Dang's condition which appellees wish to portray.

[3] Also, it is undisputed that there were no call lights in the infirmary cells.

jury. Secondly, the factual determination that there was no more than a 15 minute delay based on the testimony of Nurse Densmore was incorrect. The protective watch sheets show that Nam Dang was in the infirmary at 12:47 p.m. which is **40** minutes after he was seen by Dr. Ogunsanwo. (Doc. #144-5, p. 26)[4] Not only did the Court invade the province of the jury to determining that a 15 minute delay does not support deliberate indifference, it did so based on an incorrect assumption of undisputed fact. At a minimum, there is a question of fact as to the length of the delay in getting Nam Dang to the hospital and whether the medical staff at John E. Polk Correctional Facility acted with deliberate indifference to Nam Dang's serious medical need.

**H. Appellee Scott refuses to consider evidence that she was present during the Code Orange on February 20, 2012.**

Appellee Scott argues that she only had one interaction with Dang which occurred on February 9, 2012 when he came to Medical and advised that he was experiencing headaches and neck pain." (Doc. #184, Order, p. 14). However, Defendant Roberts testified that Nurse Scott was present and involved in the Code Orange encounter on February 20, 2012 and the nurse schedules show that she was working during that night shift. (Doc. #165-1, p.19, ll. 9-10; Doc. #164-15; see

---

[4] In Ogunsanwo's Answer Brief, he indicates that the record cite to not "appear to be related". (See Ogunsanwo Answer Brief, FN 4.) The cite given included protective watch sheets but did not include the page referring to February 23, 2012. The correct record cite is Doc. 144-5, p. 26.

also Initial Brief, pp.23-24) Nam Dang is entitled to an inference that Nurse Scott knew his condition had further deteriorated from the emergency walk-in encounter on February 9, 2012 by virtue of the fact that when she saw him on February 20, 2012 during the code orange, he was now non-verbal, unconscious, and drooling. However, rather than seeking the medical attention he obviously required, she, along with Nurse Roberts, choose to merely implement cursory care and further believed that he was faking his symptoms. Even assuming that they believed Nam Dang would be seen by a physician the following morning after being placed in the infirmary cell, the record evidence establishes that a physician would not be present in the infirmary until hours later.[5]

## I. Appellees ignore record evidence describing Nam Dang's condition in the last few days of his detainment at John E. Polk Correctional Facility.

Appellant offered both direct and circumstantial evidence to support a reasonable inference that Nam Dang was in fact suffering/languishing at or around the time he was in the infirmary that the Court and appellees chose not to

---

[5] According to the electronic medical record entry, the code orange was made at approximately 23:15 (11:15 p.m.), and Nurse Roberts arrived at the scene (D-pod hallway) at 23:17 (11:17 p.m.). Nurse Roberts could not state how long she spent with Dang in the medical unit waiting room (where she described evaluating him in medical); however, according to the segregation watch sheets, he was already in cell number MC05A in the infirmary at 23:45 (11:45 p.m.). (Doc. #164, Exhibit 16). Dr. Ogunsanwo testified that he typically arrived at the jail between 7 -8 a.m. (Doc. #147, p.21, ll. 2-25). Therefore, there was no expectation for a physician to be present at the infirmary for at least 7 hours from the time Nam Dang arrived.

acknowledge or failed to consider. First, the affidavit of Nam Dang's cell-mate, Anthony Laird, clearly establishes direct evidence that Nam Dang was in "extreme physical discomfort" and further that he not only informed the nursing staff of his concern for Nam Dang, but that the nursing staff did nothing to help Nam Dang, didn't care about Dang, didn't take Dang's condition seriously and believed Dang was faking sickness. (Doc. #164-18) Secondly, Nam Dang is further entitled to the reasonable inference that he has suffered a stroke and as a result thereof was suffering/languishing in his cell without treatment that night and was physically unable to speak and ask for help as his brain was being damaged further each minute that went by. (Doc. #150; Doc. #164-20) Finally, the testimony of Sarah Agurkis also establishes that Nam Dang was delusional and in extreme pain at this critical time period. (Doc. 164-19, p.35, l.8 – p.37, l.6)

II

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO SEMINOLE COUNTY SHERIFF ON THE 42 U.S.C. § 1983 MUNICIPAL LIABILITY CLAIM

**A. Appellant correctly asserted that the lower court erred in granting summary judgment as against the Sheriff under a *Monell* theory and requested that the matter be reversed and remanded back to the lower court for consideration.**

The district court's ruling on the motion for summary judgment by defendant Sheriff Eslinger as to Count One was extremely limited. Captioned

23

"Supervisor Liability," yet clearly applicable to appellant's claim of municipal liability, the order read in it entirety:

> Dang contends that while acting as the Sheriff of Seminole Count[y], Donald Eslinger, implemented various policies and practices which resulted in a violation of Dang's constitutional right to adequate medical care under the Fourteenth Amend[ment] [to] the United States Constitution. However, in light of the Court's determination that the individual nurses and doctor were not deliberately indifferent [to] Dang's serious medical needs, and that he suffered no constitutional deprivation, there simply is no basis for supervisor liability. Accordingly, the Sheriff's motion for summary judgment will also be granted.

Doc. 184 at 18-19 (quotations omitted).

The district court, therefore, clearly did not reach the merits of the municipal policy claim against Sheriff Eslinger. Recognizing that the district court correctly noted that a municipal policy claim, to succeed, at the threshold relies on the presence of a constitutional violation, appellant appropriately preserved the issue, acknowledging it was contingent on this Court's determination that the district court's conclusions on the Fourteenth Amendment claims were erroneous. Appellant preserved the issue by noting, in Issue 2 of his Initial Brief, that the district court's summary holding as to municipal liability is contingent on its extensive findings on the constitutional issue. The district court made no finding on the municipal liability claim other than recognizing that it is contingent on the constitutional claims. The only appropriate position on appeal for Dang, therefore,

is to preserve the issue by requesting remand for the district court's substantive consideration, but only in the event this Court reverses any or all of the constitutional claims against the individual appellees as a necessary prerequisite. Nevertheless, to the extent that the Court intends to consider the merits of municipal liability, appellant incorporates his argument as set forth in the summary judgment briefing contained within the record. (Doc. 167)

## CONCLUSION

Appellees have raised challenges to the material facts of this case, however, they have failed to show that a reasonable jury could never conclude that the jail medical staff knew of Nam Dang's deteriorating condition and ongoing, worsening pain and acted with deliberate indifference to same. While there may be disputes as to the interpretation of the facts, there is sufficient evidence that creates a jury question as to these critical issues. The lower court improperly ignored factual disputes and accepted the Appellees' version of the facts in granting summary judgment and thus committed reversible error. The district court's order granting summary judgment on all counts should be vacated, and this case should be remanded for further proceedings in the district court.

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because this brief contains 6,247 words, excluding the pages of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Word in 14 point Times New Roman font.

*/s/ Melissa H. Powers*

MELISSA H. POWERS

Respectfully submitted,

/s/ Matthew P. Farmer

_____

Matthew P. Farmer
FL Bar No. 0793469
708 E. Jackson Street
Tampa, FL  33602
(813) 228-0095
Fax (813) 224-0269
MattFarmer1@aol.com

and

Melissa H. Powers, Esq.
FL Bar No. 0132284
631 W. Morse
Blvd., Suite 200
Winter Park, FL 32789
(407) 839-0866
FAX (407) 425-7958
mhpowers@maherlawfirm.com

27

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that an original and six (6) copies of this brief was furnished by U.S. mail on the 1st day of April, 2016 to U.S. Court of Appeals for the 11th Circuit, 56 Forsyth St., N.W., Atlanta, GA 30303 and a copy was provided to counsel via the ePortal electronic system to:

Matthew P. Farmer, Esq.
Farmer & Fitzgerald
102 W. Whiting St.
Tampa, FL   33602

D. Andrew DeBevoise, Esq.
Thomas W. Poulton, Esq.
Jeffrey K. Grant, Esq.
DeBevoise & Poulton, P.A.
1035 S. Semoran Blvd.
Suite 1010
Winter Park, FL   32792

John M. Green, Jr., Esq.
John M. Green, Jr., P.A.
125 N.E. 1st Avenue
Suite 2
Ocala, FL   34470

Bruce R. Bogan, Esq.
Hilyard, Bogan & Palmer, P.A.
105 E. Robinson St.
Suite 201
Orlando, FL   32801

*/s/ Melissa H. Powers*

MELISSA H. POWERS, ESQ.
Florida Bar No.: 132284
The Maher Law Firm, P.A.
631 W. Morse Blvd., Suite 200
Winter Park, FL   32789
Phone: (407) 839-0866
Facsimile: (407) 425-7958